567 F.2d 546
 1 Employee Benefits Ca 1659
 James M. MORRISSEY and Ralph Ibrahim, Individually and on
behalf of the members of the National Maritime
Union of America, Plaintiffs-Appellants,
v.
Joseph CURRAN, as President of the National Maritime Union
of America, as a trustee of the NMU Pension &
Welfare Plan, and Individually, et al.,
Defendants-Appellees.
 No. 118 Docket 77-7259.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 20, 1977.
Decided Dec. 8, 1977.
 
 John S. Chapman, Jr., New York City (Duer & Taylor, New York City, Arthur E. McInerney, New York City, on the brief), for plaintiffs-appellants.
 Ned R. Phillips, New York City (Phillips & Cappiello, New York City, on the brief), for defendants-appellees Joseph Curran, Shannon Wall, Mel Barisic, Rick S. Miller, James J. Martin and Peter Bocker.
 Morton M. Maneker, New York City (Proskauer, Rose, Goetz & Mendelsohn, New York City, Gail G. Sticker, New York City, on the brief), for defendants-appellees Martin F. Hickey, Edmond Marcus, W. I. Ristine, Clifford V. Rowland, Edward J. Heine, F. K. Riley, Jr. and Alvin Shapiro.
 Before LUMBARD, FEINBERG and VAN GRAAFEILAND, Circuit Judges.
 FEINBERG, Circuit Judge:
 
 
 1
 Plaintiffs James M. Morrissey and Ralph Ibrahim, members of the National Maritime Union of America, appeal from a decision of the United States District Court for the Southern District of New York, Robert J. Ward, J., dismissing on jurisdictional grounds their amended complaint against various officers of the Union and the trustees and administrator of the NMU Pension & Welfare Plan ("the Plan"). Because we believe that under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., jurisdiction exists as to at least one of the transactions alleged in the complaint, we reverse for further proceedings.
 
 
 2
 * As the district judge rightly put it, this litigation has had "a lengthy history." The earlier manifestations, summarized in the margin,[1] need not concern us now. The latest aspect is an amended complaint containing three causes of action based on ERISA.[2] That complaint alleges that defendants improperly administered the Plan by using more than $25,000 of its funds for pleasure trips, by improvidently investing over $1 million in a Panama venture, by misappropriating some $50,000 for personal use, and by paying $201,820.58 to defendant Shapiro, the Plan's administrator. Plaintiffs sought an accounting, money damages payable to the Plan and an injunction against future misuse of its assets.
 
 
 3
 The district judge recognized that the complaint alleged "continuing wrongdoing," but concluded nonetheless that "all of the acts complained of appear to have taken place prior to January 1, 1975." Since ERISA did not become effective until that date, the district judge concluded that he lacked jurisdiction because ERISA was not retroactive. The judge rejected a complicated argument offered by plaintiffs that 29 U.S.C. §§ 1132(a)(3) and 1104(a)(1)(D) gave the court jurisdiction over any claim of violation of "the terms of the plan," regardless of when the violation took place.[3] The judge also held, contrary to plaintiffs' contention, that 29 U.S.C. § 1105(a) (3)[4] did not confer jurisdiction over a claim against a trustee who, prior to ERISA's effective date, acquired knowledge continuing to the present time concerning another trustee's breach of duty. Accordingly, the judge dismissed the amended complaint, and this appeal followed.
 
 II
 
 4
 Before us, plaintiffs in large part repeat the arguments they made below for construing ERISA to furnish federal jurisdiction to examine pre-1975 transactions. While the authority in this circuit is against plaintiffs on the retroactivity of ERISA,[5] we have not directly addressed the other issues of statutory construction that plaintiffs raise. However, for reasons indicated below, we do not find it necessary to deal with them. In this court, plaintiffs stress that whatever else the trustees may have done before 1975, they also breached their trust after that date. Plaintiffs argue that when the trustees became ERISA fiduciaries on January 1, 1975, they inherited an imprudent and unproductive investment in Panama, which they were bound to review and liquidate. As ERISA trustees, defendants cannot be excused from this obligation merely because the unwise investment was made before ERISA took effect.
 
 
 5
 The district judge did not deal with this argument, undoubtedly because it was not pressed with clarity below. However, the amended complaint contained allegations broad enough to encompass this claim of present fiduciary violation,[6] and other papers before the district judge supported it.[7] We have no doubt that under the "prudent man" rule, which is codified in ERISA,[8] the trustees here had a duty within a reasonable time after ERISA took effect to dispose of any part of the trust estate which would be improper to keep.[9]
 
 
 6
 Under these circumstances, we remand the case to the district court, which has jurisdiction under ERISA over plaintiffs' claim that the trustees improperly retained the Panama investment after January 1, 1975. Indeed, under the exclusive jurisdictional provisions of ERISA,[10] that claim could be made nowhere else. See Marshall v. Chase Manhattan Bank, 558 F.2d 680 (2d Cir. 1977). We do not know whether the Fund actually possessed a Panama investment after January 1, 1975, or whether, if it did, keeping the investment was unwise. There was some dispute on the matter at oral argument in this court, and we cannot resolve such issues. But on this record, it was error for the district judge to rule as a matter of law, with no further inquiry into the facts, that jurisdiction was lacking under ERISA. We leave to the district court the question whether to take jurisdiction over the other claims against defendants.[11] In exercising its discretion, the district court will undoubtedly keep in mind that a portion of plaintiffs' action must be brought in the federal court, that the district court and the parties have already devoted considerable time and effort to the other incidents of alleged wrongdoing, that bifurcation of the claims may be wasteful and that success on the pendent claims may afford plaintiffs substantially complete relief. Of course, the substantiality of plaintiffs' claim concerning post-1975 fiduciary abuse will also be relevant to the court's determination.
 
 
 7
 Case remanded for further proceedings consistent with this opinion.
 
 LUMBARD, Circuit Judge (concurring):
 
 8
 Although I endorse both the reasoning and the conclusion of Judge Feinberg's carefully considered opinion, I would go further in recognizing federal jurisdiction over these plaintiffs' claims under ERISA. Specifically, I would hold that 29 U.S.C. § 1105(a)(3)[1] makes it a violation of ERISA for a trustee who has knowledge after January 1, 1975, of a breach of fiduciary responsibility committed in the past by a co-trustee, to take no corrective action if there is a reasonable basis for the recovery of wasted assets from the receiver thereof, or of misused funds from the person who profited from the misuse.
 
 
 9
 Section 1105(a)(3) does not speak of violations of ERISA, or even of violations of the plan; it deals explicitly with breaches of fiduciary responsibility. ERISA only created a federal standard for those fiduciary responsibilities which trustees of pension plans already owed to the beneficiaries under well settled principles. When Congress wished to limit the applicability of a section of ERISA to offenses involving the new law itself, it drafted the appropriately restrictive language, as in 29 U.S.C. § 1132. Where it did not do so, as in section 1105, I conclude that the resulting liability is to be read more broadly.
 
 
 10
 What is required by section 1105, then, is that a trustee who "has knowledge of a breach by (an) other fiduciary . . . (make) reasonable efforts under the circumstances to remedy the breach." The only reference to time in the section is in connection with the possession of knowledge: presumably, in order to come within the compass of ERISA, the trustee to be charged must possess the relevant knowledge at some time after the effective date of ERISA. Allegations of that nature form a major part of the plaintiffs' claims herein.
 
 
 11
 It is not unreasonable to suppose that Congress wished to impose upon trustees of a pension plan as of January 1, 1975, a duty to be alert to rectify breaches of fiduciary responsibility committed by co-trustees at some recent date; indeed, such a duty seems no more burdensome than the duty recognized by Judge Feinberg's opinion to search the plan's portfolio for imprudent investments. Just as trustees who retained their posts through the magic date of January 1, 1975, may be said to have started with a clean slate (in the eyes of federal law) with respect to the quality of the plan's investments, so they started with a clean slate with respect to abuses that they may have deliberately ignored or aided in concealing but in either case, the slate would rapidly be soiled if the trustees did not take advantage of the locus poenitentiae afforded them by the statute, and swiftly act to remedy their and their co-trustees' past delicts. Indeed, the legislative history of ERISA provides a very clear picture of just what the "reasonable efforts under the circumstances" called for by section 1105 might have entailed:
 
 
 12
 (T)he most appropriate steps in the circumstances may be to notify the plan sponsor of the breach, or to proceed to an appropriate Federal court for instructions, or bring the matter to the attention of the Secretary of Labor.
 
 
 13
 House Conference Report No. 93-1280, 93d Cong., 2d Sess., 1974 U.S.Code Cong. & Ad.News 5080.
 
 
 14
 It may suffice to consider two hypothetical situations in order to demonstrate the undesirable consequences of the hiatus in trustee responsibility that would exist if we hold that there is no such duty of rectification. First, let it be supposed that a trustee had learned of an egregious breach of fiduciary responsibility by a co-trustee occurring some time in 1974, but that he had acquired this knowledge immediately prior to the effective date of ERISA. If it were not reasonable to require him to act at once by reason of the late hour, would he thereby be absolved of any responsibility to act simply because ERISA became effective between the time he learned of the abuse and the time by which he could be expected to take remedial action? Yet since he had committed no breach himself prior to January 1, 1975 (assuming his failure to act immediately was reasonable), he could not be held accountable in any state court. See Marshall v. Chase Manhattan Bank, 558 F.2d 680 (2d Cir. 1977). Only by permitting a federal court to assume jurisdiction over a suit against him could he be brought to account for any failure to take corrective action.
 
 
 15
 Second, let it be supposed that a trustee does not even learn of a pre-effective breach by a co-trustee until after the effective date of ERISA. How then is he to be constrained to seek a remedy if not by permitting an action against him to be maintained under 29 U.S.C. § 1105(a)(3)? Since this is a situation not unlikely to recur with some frequency at least for the next few years, I deem it preferable to address squarely another question of jurisdiction under ERISA that my colleagues do not decide, rather than leave beneficiaries without any recourse against trustees who choose to continue to cover up abuses by their fellows that occurred before January 1, 1975.
 
 
 16
 I wish to emphasize that in my view, the reading of section 1105 that I advocate does not represent either a radical departure from prior construction of ERISA or an extension of federal jurisdiction beyond appropriate limits. The authority of the cases cited by Judge Feinberg in footnote 5 of his opinion, concerning the non-retroactivity of ERISA, remains undiminished. It is present knowledge coupled with unjustifiable inaction that constitutes the predicate for liability, not any acts or omissions that took place prior to January 1, 1975. Moreover, like Judge Feinberg, I find it unnecessary to consider plaintiffs' arguments that 29 U.S.C. § 1132 confers upon federal courts jurisdiction to hear claims, governed by state law, concerning naked pre-1975 breaches of fiduciary responsibility. Acceptance of that contention would involve major questions of the proper scope of protective and other forms of federal jurisdiction. See Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957).
 
 
 17
 Finally, even on the narrower view of this case taken by Judge Feinberg, I would like to point out explicitly what I believe is implicit in his opinion: In order for the district court to be able adequately to decide whether to take jurisdiction over plaintiffs' claims other than those concerned with the Panamanian investment, plaintiffs should be permitted a reasonable opportunity for discovery with respect to these claims. This will not only help the plaintiffs, who, situated as they are, have no access to such evidence as may exist of deliberate cover-ups by trustees; it will also aid the court in determining whether the proof relating to the other claims will be so closely tied to that concerning the Panamanian investment as to make the claims ones which the plaintiffs would "ordinarily be expected to try . . . all in one judicial proceeding. . . ." United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).
 
 
 
 [1]
 Preliminary maneuvers began in August 1971, when plaintiffs served a demand letter on the Union. In January 1973, Judge Carter of the United States District Court for the Southern District of New York granted plaintiffs permission to bring suit under § 501 of the Labor Management Reporting and Disclosure Act. 29 U.S.C. § 501. A complaint was filed, and the case was later assigned to Judge Conner. In 1975, after obtaining leave of the court, plaintiffs filed an amended complaint asserting further § 501 violations and a new cause of action under § 302 of the Labor Management Relations Act. 29 U.S.C. § 186. Following further skirmishes of an inconclusive nature, plaintiffs obtained yet another order granting leave to sue, this time from Judge Palmieri, and filed a new complaint in February 1976 seeking an accounting and money damages under both § 501 and § 302. In an order dated October 1, 1976, Judge Ward dismissed the complaint without prejudice to the filing of an amended complaint incorporating an ERISA-based theory of federal jurisdiction. Such a pleading was filed in October 1976, and forms the basis of the instant appeal
 
 
 [2]
 A fourth cause of action, based upon 29 U.S.C. § 501, has been withdrawn by stipulation
 
 
 [3]
 29 U.S.C. § 1132(a)(3)(B)(ii) allows plan participants, beneficiaries, or fiduciaries to bring an action in federal court "to enforce any provisions of this subchapter or the terms of the plan." Among the "provisions of this subchapter" is 29 U.S.C. § 1104, which obligates fiduciaries to prudently discharge their plan-related duties and to abide by "the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter." Juxtaposing the two sections, plaintiffs urge that post-1975 violations of "the terms of the plan" are also violations of "the provisions of this subchapter." They then argue that the § 1132(a)(3)(B)(ii) reference to enforcement of both the plan and the statute can only be saved from redundancy if the authorization to enforce "the terms of the plan" is read to encompass redress of pre-1975 fiduciary abuses
 
 
 [4]
 That section provides:
 (a) In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
 (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.
 
 
 [5]
 See Nolan v. Meyer, 520 F.2d 1276, 1278 n.2 (2d Cir.), cert. denied, 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975); Cuff v. Gleason, 515 F.2d 127, 129 (2d Cir. 1975); Haley v. Palatnik, 509 F.2d 1038, 1042 n.5 (2d Cir. 1975). Plaintiffs have been unable to cite any contrary precedent on this point, and we have found none
 
 
 [6]
 Paragraphs 14 and 24 of the amended complaint read, in pertinent part:
 FOURTEENTH: Upon information and belief that heretofore the defendants, in violation of the terms of said plan, did make improvident and imprudent investments and loans in Panama and elsewhere of the funds entrusted to them without adequate security which have or will result in losses to the Deep Sea Funds of sums in excess of $1,000,000.00 . . . .
 TWENTY-FOURTH: That the defendants (sic) said use of said fund and the continuation of such use has done and will do irreparable harm to the . . . Fund and to the security intended to be provided for the retirement and other benefits of employee members of NMU.
 (Emphasis supplied).
 
 
 [7]
 An affidavit of plaintiffs' attorney, listing expenditures connected with the Panama investment from January 1970 through October 1974, stated that
 My information is that of the three million plus invested, there is no housing and no return of either income or principal invested. Naturally, we will need complete discovery on this and other imprudent investment of trust funds.
 
 
 [8]
 29 U.S.C. § 1104(a)(1)(B) provides in pertinent part:
 Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . .
 
 
 [9]
 The trustee's obligation to dispose of improper investments within a reasonable time is well established at common law. See, e. g., III Scott on Trusts § 209 (3d ed. 1967). ERISA can hardly be read to eviscerate this duty, especially in light of its requirement that fiduciaries take remedial action upon discovery of breaches by co-fiduciaries. See 29 U.S.C. § 1105(a)(3). For discussions of the import of this provision in the context of improper investments, see S.Rep. No. 93-1090, 93d Cong., 2d Sess. 299-300 (1974) (ERISA trustee's obligation to take corrective action upon discovery of investments acquired in violation of the trust instrument); Little & Thrailkill, Fiduciaries Under ERISA: A Narrow Path to Tread, 30 Vand.L.Rev. 1, 32 (1977) (ERISA trustee who discovers breach by another fiduciary must take "reasonable actions to remedy the breach"; this may include "correcting a prohibited transaction or an imprudent investment . . . .")
 
 
 [10]
 29 U.S.C. § 1132(e)(1) vests federal district courts with "exclusive jurisdiction of civil actions under this subchapter" brought by, inter alia, participants and beneficiaries, unless the relief sought is limited to recovery or clarification of benefits due under the terms of a pension plan
 
 
 [11]
 To the extent that the complaint alleges claims under state law, the district court can take pendent jurisdiction over them. We note in this regard that several of the defendants on these claims were no longer trustees at the time ERISA became effective. These individuals are not, therefore, defendants on the post-1975 claim which we have found sufficient to vest jurisdiction in the district court. Thus, the district court will be required to determine not only whether to exercise pendent jurisdiction over the state claims, but also whether that jurisdiction extends to persons not parties to the claim conferring federal jurisdiction. This problem has provoked considerable attention, and the implications of the latest Supreme Court decision on the subject, Aldinger v. Howard, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), remain to be determined. See Grimes v. Chrysler Motors Corp., 565 F.2d 841 (2d Cir. 1977); Fawvor v. Texaco, Inc., 546 F.2d 636 (5th Cir. 1977); Ayala v. United States, 550 F.2d 1196 (9th Cir. 1977); petition for cert. filed, --- U.S. ----, 98 S.Ct. 50, 54 L.Ed.2d 70 (1977); Note, Aldinger v. Howard and Pendent Jurisdiction, 77 Colum.L.Rev. 127 (1977) and authorities cited therein. See also Leather's Best, Inc. v. S. S. Mormaclynx, 451 F.2d 800, 809-11 (2d Cir. 1971) (pre-Aldinger ). The point has not been briefed or argued before us, and we express no opinion on it
 
 
 [1]
 Section 1105, in relevant part, states:
 In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
 (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.