Ray MARSHALL, Secretary of the United States Department of Labor

v.

Allen CRAFT, Jr., Sconnie B. Craft, and Virginia Massar.

Civ. A. No. C78–1237A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 13, 1978.

**494**

David V. Marshall and Norman P. Goldberg, U. S. Dept. of Labor, Plan Benefits Security Div., Washington, D. C., for plaintiff.

Richard L. Stumm and B. Lee Crawford, Jr., of O'Callaghan, Saunders & Stumm, Atlanta, Ga., for defendants.

## ORDER

EDENFIELD, District Judge.

This action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, et seq., is before the court on defendants' motion to dismiss.

Plaintiff alleges that defendants Allen Craft and Virginia Massar have been trustees since October, 1966 for the Craft Associates Company, Inc. Profit Sharing Trust (the Plan), an employee pension benefit plan under § 3(2) of ERISA, 29 U.S.C. § 1002(2). The third individual defendant, Sconnie Craft, has been a trustee since September, 1976. Plaintiff asserts that defendants, as fiduciaries to the Plan, ERISA § 3(21), 29 U.S.C. § 1002(21), have failed to carry out their duties to act solely in the interest of its participants and beneficiaries and to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character  . . . ." Complaint, ¶ 6. See ERISA § 404(a), 29 U.S.C. § 1104(a). These breaches of duty are said to have taken place in connection with the purchase of a tract of Floyd County real estate. The investment is allegedly impermissible under the terms of the Plan, as well as an improper sale or exchange between the Plan and a party in interest, as the transfer was from defendant Allen Craft. See ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A);

ERISA § 3(14); 29 U.S.C. § 1002(14). Additional allegations appear which have their roots in the Floyd real estate, such as the charge that defendant Allen Craft dealt with Plan assets in his own interest by permitting the Plan to expend money in connection with the property, see ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), and the further claim that defendants Massar and Sconnie Craft assisted Allen Craft with his derelictions, failed to use due care to prevent him from breaching his duties, and failed to remedy the situation once they acquired knowledge of the breaches.

Defendants now present a two-fold argument in support of their motion to dismiss, arguing that the court lacks jurisdiction of the case and that plaintiff has failed to state a claim. Defendants state * that during the summer of 1973 the Board of Trustees for the Plan discussed the possibility of investing trust funds in real property. More particularly, the trustees agreed that the acquisition of such an interest through a partnership arrangement should be investigated. Defendant Allen Craft subsequently learned of a proposed sale of 486 undeveloped acres in Floyd County, and the property was discussed by the trustees and a decision was made to attempt to invest in it as a member of a partnership comprised of Charles Emerson, Dudley Simpson, Reba Couey and the trust. Both the trustees and the other members of the partnership knew at the time that the trust was the purchaser and would be a beneficial owner of one-fourth of the property.

The tract was purchased at auction in September, 1973, with the closing on or about January 11, 1974. Because the partnership would have experienced difficulty in obtaining favorable financing if the trust were openly named an owner, the trustees made defendant Allen Craft the trust's agent to hold legal title to the Floyd County interest for the trust, an action which defendants assert was authorized by the original plan and trust instrument. Defendants further state that the trust has made payments since 1974, representing its

---

\* Defendants' statement of facts is supported by affidavit and other documentation.

proportionate share of the purchase price. In November, 1976, defendant Craft transferred legal title to the one-quarter interest to the trust directly, thus uniting the legal and equitable title.

Defendants point out that the fiduciary standards provisions of ERISA on which plaintiff largely relies did not become effective until January 1, 1975. ERISA § 414(a); 29 U.S.C. § 1114(a). They argue that actions taken by trustees of the Plan prior to that date are immune from judicial scrutiny, so that the actual acquisition of the property should not be actionable. *See Martin v. Bankers Trust Co.*, 565 F.2d 1276, 1278–79 (4th Cir. 1977); *Knauss v. Gorman*, 433 F.Supp. 1040, 1042 (W.D.Pa.1977); *Morgan v. Laborers Pension Trust Fund*, 433 F.Supp. 518, 522–24 (N.D.Cal.1977). Anticipating that plaintiff will contend that actions taken after January 1, 1975 with respect to the property should be viewed as independent ERISA violations for which suit may be brought, defendants characterize this position as a "bootstrap argument". Defendants assert that all such actions have been taken "in a bona fide and good faith effort to preserve the assets of the Trust according [to] their obligations under ERISA," Defendants' Brief, at 6, and that they cannot, consistent with their obligations, dispose of the property—if it is a bad investment—without regard to whether such action would be harmful to the trust. Defendants also claim that to trace jurisdiction to a pre-January 1, 1975 action would be to employ a continuing violation theory of the sort rejected in *Martin, supra*. Defendants thus argue that "Plaintiff's claim is based in its entirety upon alleged continuing effects of an action by the Trustees which unquestionably occurred prior to the effective date of the fiduciary standards set forth in ERISA," Defendants' Brief, at 9, a characterization of the complaint which is thought to place the case without the court's jurisdiction.

As previously noted, defendants also take issue with the merits of plaintiff's claim. They assert that they have acted throughout in good faith, intending to act in the best interests of the Plan's participants, and

on the advice of counsel as to the original investment. Defendants further regard the Floyd County purchase as reasonable and prudent, undertaken in the expectation that a reasonable return would be earned, and they assert that, in the long run, "such a return remain[s] feasible." Defendants' Brief, at 10. Their actions are thus seen as consistent with the letter and spirit of ERISA.

With respect to defendant Sconnie Craft, who did not become a trustee until December 1, 1976, the additional argument is made that the investment is clearly proper under the amended plan which became effective the same day. In addition, Article 15.4 of the amended plan provides that

> A Trustee shall not be liable or responsible in any way for any act or omissions in the administration of the Trust prior to the date he became a Trustee or after the date he shall cease to be a Trustee. A successor Trustee shall not have any duty to review the actions or accountings of any prior Trustee.

Defendant Sconnie Craft is thus seen as exonerated from liability for mishandling of the Plan prior to her assumption of duty.

Defendants also level an attack on the validity of plaintiff's claim that prohibited transactions have been engaged in, ERISA §§ 406, 407(a); 29 U.S.C. §§ 1106, 1107(a), on the ground that the effective date of those sections will not be reached until June 30, 1984. ERISA, § 414(c), 29 U.S.C. § 1114(c). Claims against defendants Sconnie Craft and Virginia Massar for "aiding and abetting" Allen Craft's actions are thought to be negated by affidavits disclaiming knowledge that either their or their co-trustee's actions could be thought to violate ERISA and further indicating that they acted in good faith and for the benefit of the Plan beneficiaries. Defendants thus assert that they have done nothing improper so that the complaint against them should be dismissed.

Plaintiff tells a somewhat different story which, like defendants', is supported by information from outside the pleadings. Dis-

claiming any intent to base alleged violations of ERISA on events which occurred prior to January 1, 1975, plaintiff asserts that his complaint is concerned with unlawful conduct after that date. Plaintiff states that the purchase of the Floyd County land was made in 1973 and 1974 by four investors, including defendant Allen Craft, acting as a partnership, a position with which defendants agree, at least as to the facial transaction. When the first annual installment on the note fell due in January, 1975, no payment was made until two months later, after threats to foreclose had been made. Defendant Craft's $18,000 portion was advanced by the Craft Associates Company, Inc., and the latter was reimbursed from the Plan savings account. According to plaintiff, this reimbursement was the first transaction documented in anyone's records which indicated any potential involvement of the Plan in the purchase. No explanation appeared in the records, however, nor was there any other documentation of the Plan's interest. Plaintiff argues that

> The foregoing events appear, at the very minimum, to have left the Plan's assets unprotected and its interests undefined, a course of events that among other things provides a substantial basis for allegations of imprudence on the part of the trustees and self-dealing on the part of Allen Craft.

Plaintiff's Brief, at 8.

In addition to this post-January 1, 1975 item, plaintiff points out that when the purchase was refinanced in July, 1975, there was no evidence of Plan involvement. Indeed, plaintiff Secretary asserts that the records maintained by those through whom the refinancing was accomplished show that all of them thought that they were dealing with Allen Craft as an individual rather than as a trustee. This belief was bolstered by a Craft financial statement which listed $35,000 equity in the Floyd County property as a personal asset. Furthermore, Allen Craft's attorney and accountant, Charles Emerson of the partnership, listed the investment in his records as a personal interest of his client. As for refinancing closing costs in 1975, Allen Craft's one-fourth share was paid by his company, but no payment from Plan funds was made, and no entries were made in Plan records.

On July 1, 1976, according to plaintiff, retroactive entries were made in the records of the Plan reflecting that its assets included a one-fourth interest in the Floyd County tract and that previous payments made by the Craft Associates Company, Inc. were loans to the Plan. Defendant Allen Craft subsequently executed a warranty deed conveying his individual legal interest in the land to himself as trustee, and in December, 1976, the Craft Company was reimbursed in part for its loans to the Plan by a check in the amount of $26,700. Plaintiff suggests that this sequence of events supports the theory that defendant Allen Craft shifted ownership of his investment in the Floyd County property after it appeared to him that it was both burdensome and unprofitable. His fellow trustees, of course, stood by and permitted such conduct or failed to take subsequent corrective action.

■ The complaint in this case is clearly broad enough to support the interpretation of only post-January 1, 1975 violations which plaintiff places upon it. While it appears that ERISA is indeed not retroactive, *see Martin, supra*, the complaint alleges more than simply pre-effective date conduct. As plaintiff points out, the statute represents a comprehensive remedial effort to protect participants and beneficiaries of pension benefit plans, *see Lewis v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 431 F.Supp. 271, 275–76 (E.D.Pa.1977); *Marshall v. Snyder*, 430 F.Supp. 1224, 1231 (E.D. N.Y.), *aff'd* 572 F.2d 894 (2d Cir. 1977); as such, a complaint charging violations of this statutory scheme ought not to be lightly dismissed. Defendants of course may be correct in asserting that there can be no "continuing violations" of ERISA in the sense of liability for completed pre-1975 acts, *see Martin, supra*, but the complaint here alleges independent violations occurring after January 1, 1975. *See Morrissey v. Curran*, 567 F.2d 546, 548–49 (2d Cir.

1977). The court simply sees no room for either the contention that there is no subject matter jurisdiction under ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), or that the complaint fails to state a claim. *See Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). To hold otherwise would be in large measure to insulate post-1974 actions from review simply because their roots could be traced to an event prior to the effective date of ERISA, a clearly improper result given the purpose and nature of the statute.

■ As should be apparent from the prior and somewhat lengthy statements of facts, however, defendants' motion would appear to be more in the nature of one for summary judgment than for dismissal. See Rule 12(b)(6), Fed.R.Civ.P. Suffice it to say that such a motion is premature at this stage of the case, as the facts are clearly not developed and are in substantial dispute to the extent that they have been developed. The court is in no position to determine on the present record whether the defendant trustees have breached their obligations to the trust, whether an accounting should be ordered, or whether the defendants should be replaced. Defendants' affidavits are to a certain degree self-serving, while plaintiff's case is at this point built to some extent on inferences. Neither provides a particularly comfortable basis for a decision.

■ A few additional comments must be made in light of certain of defendants' arguments. First, with respect to defendant Sconnie Craft, who did not become a trustee until 1976, defendants have argued exoneration from liability on the basis of the trust provisions themselves. This position loses much of its force in the face of ERISA § 410(a), 29 U.S.C. § 1110(a), which states, with certain exceptions which do not appear to be relevant here, that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." And, as is apparent from *Morrissey, supra,* a successor trustee has a duty to liquidate prior improper investments upon assuming his responsibilities. Finally, ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), provides:

> [A] fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: . . . (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

Second, with respect to defendants' attack on plaintiff's claim that prohibited transactions have been engaged in, the court notes that the delayed effective date for the provisions on which they rely refers to loans, extensions of credit, leases, and joint use of property which were in effect on July 1, 1974. Even assuming that plaintiff's allegations fall within this area—a somewhat doubtful proposition on the present record—the statute contains the further requirement that the transaction "remains at least as favorable to the plan as an arm's-length transaction with an unrelated party would be . . .", ERISA, §§ 414(c)(1), (2); 29 U.S.C. §§ 1114(c)(1), (2). This last appears to present factual questions not ripe for current resolution. The same also would seem to be true of the immediately subsequent subsection of the statute, which provides a delayed effective date for the "sale, exchange, or other disposition" of either leased or jointly used property so long as "the plan pays an amount which is not in excess of the fair market value of the property at the time of such acquisition." ERISA, § 414(c)(3)(B), 29 U.S.C. § 1114(c)(3)(B).

For the foregoing reasons, defendants' motion to dismiss is DENIED.