487 F.Supp. 58 (1980)
TRUSTEES OF the RETIREMENT BENEFIT PLAN OF the PITTSBURGH PRESS COMPANY AND PITTSBURGH MAILERS UNION LOCAL NO. 22, Plaintiff,
v.
EQUIBANK, N.A., a National Banking Association, Defendant.
TRUSTEES OF the TYPO PHASE-OUT PENSION AND MORTUARY PLAN OF the PITTSBURGH PRESS COMPANY AND PITTSBURGH TYPOGRAPHICAL UNION NO. 7, Plaintiff,
v.
EQUIBANK N.A., a National Banking Association, Defendant.
Civ. A. Nos. 79-902, 79-903.
United States District Court, W. D. Pennsylvania.
March 28, 1980.
*59 Ronald L. Gilardi, Pittsburgh, Pa., for plaintiffs.
W. Gregg Kerr, Jr., Pittsburgh, Pa., for defendant.

OPINION
ZIEGLER, District Judge.

I. History of Case

Plaintiffs, Trustees of the Retirement Benefit Plan of the Pittsburgh Press Company and Pittsburgh Mailers Union Local No. 22 (Mailers Plan), and Trustees of the Typo Phase-Out Pension and Mortuary Plan of the Pittsburgh Press Company and Pittsburgh Typographical Union No. 7 (Typographical Plan), executed two separate trust agreements with defendant, Equibank.[1] *60 Pursuant to these agreements, Equibank assumed fiduciary obligations to the respective plans.
In their original complaint, plaintiffs allege that Equibank breached certain fiduciary obligations subsequent to the effective date of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq., in the following particulars: (1) improvidently purchasing and disposing of numerous securities; (2) failing to employ appropriate and reasonable investment techniques; (3) failing to fully disclose the nature of its acts; (4) failing to properly account to the plans; and (5) imprudently acquiring and disposing of various long-term securities. Jurisdiction under the original complaint is predicated on section 502 of ERISA, 29 U.S.C. § 1132 (1974).
On January 4, 1980, plaintiffs amended their complaints to allege that Equibank breached its fiduciary obligations to each plan prior to the effective date of ERISA in the precise manner as outlined above.[2] Jurisdiction over the pre-ERISA or state claims is predicated on pendent jurisdiction.
Presently before the court is the motion of Equibank to dismiss the pre-ERISA claims for want of subject matter jurisdiction. Equibank contends that (1) the court lacks the constitutional power to adjudicate these claims, and (2) assuming such power to exist, the court should exercise its discretion and decline to accept jurisdiction. For the reasons set forth herein, the motion will be denied.

II. Discussion

It is undisputed that, pursuant to 29 U.S.C. §§ 1132 and 1144, a federal district court has "exclusive jurisdiction" over all causes of action relating to any employee benefit plan covered by ERISA and which accrue subsequent to January 1, 1975. Cowan v. Keystone Employee Profit Sharing Fund, 586 F.2d 888 (1st Cir.1978); Martin v. Bankers Trust Co., 565 F.2d 1276 (4th Cir.1977). Thus, "§ 1144 . . . precludes federal jurisdiction over any cause of action arising from an `independent, actionable, event' . . . that occurred prior to January 1, 1975." Cowan v. Keystone Employee Profit Sharing Fund, supra at 894.
Plaintiffs urge, however, that this court should adjudicate the pre-ERISA claims under the doctrine of pendent jurisdiction since that doctrine enables a federal court to "hear a jurisdictionally insufficient claim which is linked to a jurisdictionally sufficient claim." Lentino v. Fringe Employee Plans, Inc., 611 F.2d 474, 478 (3d Cir.1979). Pendent jurisdiction springs from the interest of the federal judiciary and the litigants in disposing of federal and state claims in one suit. Rosado v. Wyman, 397 U.S. 397, 405, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442 (1970).
In United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court described those situations in which a federal court possesses the constitutional power to exercise pendent jurisdiction, and the Court of Appeals for the Third Circuit ably summarized the test in Lentino v. Fringe Employee Plans, Inc., supra:
Federal courts have the constitutional power to exercise pendent jurisdiction when the state and federal claims derive from a common nucleus of operative fact, such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding, and when the federal claim has sufficient substance to confer subject matter jurisdiction on the court.
611 F.2d at 478. (Emphasis in original.) It is plain that, even if our power to exercise such jurisdiction is extant, our inquiry does not end as "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." United Mine Workers v. Gibbs, supra, 383 U.S. at 726, 86 S.Ct. at 1139.

*61 A. Constitutional Power

The constitutional power to adjudicate pendent claims must be determined by reference to the pleadings, and not by facts that may be established. Lentino v. Fringe Employee Plans, Inc., supra at 478. The test is two-pronged: (1) Has the plaintiff alleged a substantial federal claim? and (2) Do the state and federal claims derive from a common nucleus of operative fact, so that a plaintiff would ordinarily be expected to try both claims in one proceeding?
In the instant case, plaintiffs have alleged a substantial federal claim. Section 3(21)(A) of ERISA defines a fiduciary as a person who "exercises any discretionary authority or discretionary responsibility" in the management or administration of a plan. 29 U.S.C. § 1002(21)(A) (1976). Section 409 of the Act creates liability for breach of a fiduciary duty. 29 U.S.C. § 1109. Section 404 defines the standard of care which a fiduciary must exercise "with respect to a plan." 29 U.S.C. § 1104. The original complaint charges that Equibank is a fiduciary and breached its obligations to the respective plans in a number of particulars. Clearly, it cannot be said that the federal claims are "wholly insubstantial" or "obviously frivolous." Hagans v. Lavine, 415 U.S. 528, 536-37, 94 S.Ct. 1372, 1378-79, 39 L.Ed.2d 577 (1974).
The second prong of the test is more difficult. Equibank argues that the pre-ERISA claims flow from alleged improprieties which must be assessed according to the economic and market conditions at the time the acts occurred. It urges that these non-federal claims do not derive from the same "nucleus of operative fact." We disagree.
All claims derive from actions undertaken by Equibank pursuant to trust agreements which pre-date the Act. The same funds or assets are involved in both circumstances and substantial overlapping between the pre and post-ERISA claims can be expected. In our judgment, the state and federal claims are situated so that plaintiffs "would ordinarily be expected to try them all in one judicial proceeding." United Mine Workers v. Gibbs, supra, 383 U.S. at 725, 86 S.Ct. at 1138.
One final factor enhances our determination of constitutional power over the non-federal claims. The grant of jurisdiction to the federal courts under ERISA is exclusive. Morrissey v. Curran, 567 F.2d 546, 549 (2d Cir.1977). Thus, plaintiffs have no choice but to file their post-ERISA claims in a federal forum. As the Supreme Court has stated:
When the grant of jurisdiction to a federal court is exclusive, for example as in the prosecution of tort claims against the United States under 28 U.S.C. § 1346, the argument of judicial economy and convenience can be coupled with the additional argument that only in a federal court may all of the claims be tried together.
Aldinger v. Howard, 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976) (emphasis in original.) See also, Maltais v. United States, 439 F.Supp. 540, 547 (N.D.N.Y.1977) (Pendent jurisdiction present because jurisdiction over United States was exclusive under the Federal Tort Claims Act.)
Our constitutional determination is buttressed by Lentino v. Fringe Employee Plans, Inc., 611 F.2d 474 (3d Cir.1979) and Morrissey v. Curran, 567 F.2d 546 (2d Cir. 1977). In Lentino, the Court of Appeals held that a district court has pendent jurisdiction over a state legal malpractice claim when a substantial federal claim is alleged under ERISA. 611 F.2d at 479. Significantly, at least one of the acts of malpractice was alleged to have occurred prior to ERISA and there, as here, the acts occurred at varying points in time. Nevertheless, the court found the malpractice claim derived from the same nucleus of fact as the ERISA claim.
In Morrissey, the plaintiffs alleged the defendants improperly administered a pension plan by: (1) misappropriating funds for personal use; (2) improvidently investing over one million dollars in a foreign venture; and (3) paying a large sum to the administrator of the plan. 567 F.2d at 547. The district court dismissed the suit finding *62 that "all of the acts complained of appear to have taken place prior to January 1, 1975." Id.
The Court of Appeals for the Second Circuit reversed, reasoning that ERISA imposed a continuing duty to review and liquidate improvident investments. Thus, at least as to one of the allegations, the foreign venture, the defendants' fiduciary duty toward the plan continued after ERISA. Id. at 548. The court held that the claim was within the "exclusive jurisdiction" of the Act. Id. at 549. The court observed:
We leave to the district court the question whether to take jurisdiction over the other claims against defendants.11 In exercising its discretion, the district court will undoubtedly keep in mind that a portion of plaintiffs action must be brought in the federal court, that the district court and the parties have already devoted considerable time and effort to the other incidents of alleged wrongdoing, that bifurcation of the claims may be wasteful and that success on the pendent claims may afford plaintiffs substantially complete relief.
Id. In footnote 11 to the above remarks, the court unequivocally stated that the district court "can take pendent jurisdiction" over claims under state law. 567 F.2d at 549, n. 11.
The significance of Morrissey is two-fold. First, it highlights the futility of attempting to bifurcate Equibank's pre-ERISA acts from its post-ERISA acts. Many of the pre-ERISA investment decisions could result in post-enactment liability due to a "continuing duty" to oversee improvident investments. Secondly, even if Equibank's pre-ERISA acts are viewed as separate and distinct state law claims, Morrissey indicates, albeit in dicta, that a district court may assume pendent jurisdiction.
We hold that this court possesses the constitutional power to exercise pendent jurisdiction over the pre-ERISA state law claims set forth in plaintiffs' amended complaint.

B. Exercising Pendent Jurisdiction

The myriad of factors which a federal court should consider when called upon to exercise pendent jurisdiction include judicial economy, convenience, fairness to litigants, the character of the federal and non-federal claims, the law to be applied, and the possibility of jury confusion. United Mine Workers v. Gibbs, supra, 383 U.S. at 726-727, 86 S.Ct. at 1139; Morrissey v. Curran, supra at 549; Maltais v. United States, supra at 549.
In the instant case, a number of factors lead to the conclusion that the court should assume pendent jurisdiction over plaintiffs' nonfederal claims. First, a substantial portion of the claims are predicated on ERISA and must be initiated in a federal forum; therefore, failure to exercise pendent jurisdiction will result in a duplicity of lawsuits. Secondly, Equibank's pre-ERISA conduct may be relevant to a determination of its post-ERISA liability. Marshall v. Craft, 463 F.Supp. 493, 497 (N.D.Ga.1978). Thirdly, the law governing plaintiffs' pre and post-enactment claims is identical. The standard of care imposed upon a fiduciary by section 404 of the Act is the "prudent man" rule. 29 U.S.C. § 1104. This is merely a codification of the common law test, Morrissey v. Curran, supra at 548-49, n. 9, which is followed by the courts in Pennsylvania. In Re Lentz' Estate, 364 Pa. 304, 72 A.2d 276 (1950). Finally, there is little likelihood of jury confusion because the standard of care governing all of plaintiffs' claims is identical.
In sum, we hold that this court has the power to exercise pendent jurisdiction over plaintiffs' pre-ERISA claims and that the exercise of that power is appropriate in this case. The motion of Equibank, N.A. to dismiss will be denied.
NOTES
[1] The agreement between the Mailers Plan and Equibank is dated May 21, 1963. The agreement between the Typographical Plan and defendant became effective January 1, 1969.
[2] See paragraphs 14 through 17 of plaintiffs' amended complaints.