106 F.3d 401
 Pens. Plan Guide P 23931Y
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Everett S. PRESTON, Plaintiff-Appellant,
v.
Stanley R. ERIKSEN, James L. Henninge, and Jeffrey A. Myers,
Defendants-Appellees.
 No. 95-3751.
 United States Court of Appeals, Sixth Circuit.
 Jan. 14, 1997.
 
 Before: MARTIN, Chief Judge; KRUPANSKY, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff has appealed from a dismissal of counts one and two of his complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), and the third count of his complaint pursuant to the abstention doctrine first articulated in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976). Plaintiff has charged that the trial court erred in concluding that: (1) his claim was time barred, giving rise to the granted 12(b)(6) motion, because the trial court failed to consider Plaintiff's "continuing course of conduct" theory; (2) he lacked standing for the breach of fiduciary duty claim, also giving rise to the granted 12(b)(6) motion, because the trial court failed to apply the appropriate jurisdictional section of the relevant statute; and (3) abstention was appropriate due to a similar pending state court action, because the trial court failed to consider the state court's dismissal of that action.
 
 
 2
 Plaintiff, Everett S. Preston ("Preston"), founded and served as Chief Executive Officer of E.S. Preston Associates, Inc. ("the Company") until January 1, 1977. Although he no longer served as its chief executive, Preston remained involved with the Company until January 23, 1982. During all of his years with the Company, it sponsored three qualified retirement plans ("Plans") for pension, profit sharing, and employee stock ownership purposes. Defendants, Stanley R. Eriksen, James L. Henninge, and Jeffrey A. Myers, were appointed as the trustees ("Trustees") of the Plans in 1988.
 
 
 3
 During early 1980, Preston applied for three loans from the Company totaling $14,000. He consolidated the loans on July 2, 1980, and agreed to an annual interest rate of 11% with a monthly payroll deduction repayment schedule of $163 until December 31, 1980, when the balance would be paid in full. Preston also signed a form authorizing the Trustees "to deduct the unpaid balance of the loan(s) and interest from any benefits that may become payable to me or my beneficiary or estate" from the Plans, in the event that he terminated his membership in the Plans before the loan had been fully repaid.
 
 
 4
 In October 1980, Preston expressed to the Trustees his wish to terminate his membership in the Plans. Instead, the Trustees encouraged Preston to accept an additional loan for $10,000. He agreed and again consolidated his outstanding loan balance.
 
 
 5
 In December 1981, Preston requested $11,147.08, the balance in his Plan accounts after outstanding loans were deducted. When the Trustees refused to pay Preston, he terminated his relationship with the Company and stopped making payments on his loan balance.
 
 
 6
 The Trustees filed a complaint in the Franklin County Common Pleas Court to collect the unpaid loan balance. Preston's answer alleged that he owed no money on the loans because his retirement benefits from the Plans exceeded his loan balance. He argued that the Trustees could adjust the amounts by deducting the outstanding loan from his retirement benefits and remit the difference to him. Preston contemporaneously filed a counterclaim seeking "$11,573, together with interest at 10 percent per annum from February 1, 1982," as well as attorneys' fees and costs.
 
 
 7
 When the state trial court learned that the United States Department of Labor was investigating the Plans, it suspended processing Preston's case until August 2, 1993, when it resumed consideration of the controversy. On March 4, 1994, the state court granted the Trustees summary judgment on the issue of liability and scheduled a trial date to assess damages. The state court dismissed Preston's counterclaim after determining that it joined federal issues over which it had no jurisdiction. The state trial judge assigned the case to a referee to resolve the issue of damages.
 
 
 8
 On February 3, 1995, when Preston filed the instant complaint in the United States District Court for the Southern District of Ohio, it was drafted in three counts. Count I alleged that the Trustees had breached their fiduciary duties under 29 U.S.C. § 1104, the Employee Retirement Income Security Act ("ERISA"), by commencing a state court action against Preston, in pursuit of his outstanding loan balance "in violation of the Plans' documents and applicable federal law." Count II alleged that the breach of fiduciary duties deprived him of Plan benefits under ERISA § 1132(a)(3). Count III alleged that the Trustees' repeated refusals to pay him retirement benefits also were cognizable under ERISA § 1132(a)(3).
 
 
 9
 On June 8, 1995, Judge Graham dismissed the complaint because both Counts I and II failed to state claims upon which relief could be granted. He dismissed Count III because the pending state court proceeding counseled abstention.
 
 
 10
 Six weeks later, on July 19, 1995, the state trial judge adopted the referee's recommendation to grant summary judgment and award damages to the company in the amount of $77,227.55. Preston had previously requested the state trial court to reconsider its March 1994 dismissal of his counterclaim. In a two page response, Judge Millard affirmed his earlier ruling.
 
 
 11
 Preston filed timely appeals from both the state and federal court dismissals. On February 2, 1996, nearly three months after the briefs to this court had been filed, the Court of Appeals of Ohio, Tenth District, sustained Preston's assignment of error and remanded the case to resolve the counterclaim, after noting that "[t]he trial court's decision regarding lack of jurisdiction over appellant's counterclaim was in apparent conflict with a decision of the U.S. District Court six weeks earlier." E.S. Preston Assoc., Inc. v. Preston, No. 95APE08-1027, 1996 WL 52889, at * 1 (Ohio App. 10 Dist. Feb. 6, 1996).
 
 
 12
 This court reviews motions to dismiss under Fed.R.Civ.P. 12(b)(6) de novo. Taxpayers United for Assessment Cuts v. Austin, 994 F.2d 291, 296 (6th Cir.1993). Abstention decisions are also reviewed under a de novo standard. Heitmanis v. Austin, 899 F.2d 521, 527 (6th Cir.1990).
 
 
 13
 As the district court explained.
 
 
 14
 The limitations period for claims of breach of fiduciary duty under ERISA is found in 29 U.S.C. § 1113. An action for breach of fiduciary duty must be brought within the earlier of six years after the date of the last action which constituted a part of the breach or violation or three years after the earliest date on which plaintiff obtained or reasonably could have obtained knowledge of the violation. 29 U.S.C. § 1113(a).
 
 
 15
 Thus, the district court concluded that "the pleadings reveal that plaintiff's claim of breach of fiduciary duty relating to the filing of the 1984 civil action is barred" because the alleged breach occurred, and Preston knew about it, eleven years prior to the filing of his federal complaint.
 
 
 16
 Preston has argued in this appeal that the Trustees' lawsuit against him constitutes a continuing violation of the Plan's fiduciary duty each day that it pends in the state court. Cf. Morrissey v. Curran, 567 F.2d 546, 549 (2d Cir.1977) (remanding a case that had been dismissed by the district court because it failed to consider that defendant pension plan trustees had "improperly retained" a bad investment after the date of the recognized jurisdictional bar). The fundamental flaw with this argument is that the rule articulated in Morrissey has not been interpreted to extend beyond conduct within the ambit of the "prudent investor" rule codified in 29 U.S.C. § 1104(a)(1)(B).[1] See, e.g., Buccino v. Continental Assurance Co., 578 F.Supp. 1518, 1521 (S.D.N.Y.1983) ("Fund fiduciaries [are] under a continuing obligation to advise the Fund to divest itself of unlawful or imprudent investments."); Pittsburgh Press Co. & Pittsburgh Mailers Union v. Equibank N.A., 487 F.Supp. 58, 62 (W.D.Pa.) ("ERISA impose[s] a continuing duty to review and liquidate improvident investments."), appeal dismissed, 639 F.2d 772 (3d Cir.1980). Consequently, the Trustees' act of filing the complaint to recover the balance of the loan is regarded as a single event, occurring well outside of both the three year and six year limitations periods under ERISA.
 
 
 17
 Judge Graham also concluded that his sua sponte dismissal of Preston's fiduciary breach claims asserted in Counts I and II of Preston's complaint was warranted because "29 U.S.C. § 1109 and § 1132(a)(2) permit recovery in the name of a plan only, not by individual participants and beneficiaries. Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134 (1985); Tregoning v. American Community Mut. Ins. Co., 12 F.3d 79 (6th Cir.1993)[, cert. denied, 114 S.Ct. 1832 (1994) ]." Thus, the court reasoned that because Preston's action was not personally cognizable by him, it "d[id] not state a claim for relief under ERISA and [had to] be dismissed."
 
 
 18
 Preston assigned error to the disposition of Count II in his complaint, which was based upon 29 U.S.C. § 1132(a)(3), because the district court had mistakenly relied on § 1132(a)(2) to control its outcome. Section 1132(a)(3) provides,
 
 
 19
 [A civil action may be brought] by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan....
 
 
 20
 Although Preston has urged this court to "permit[ ] a participant to recover monetary damages from a fiduciary who violated contractual and other duties imposed by the plan and ERISA," this circuit has declined to adopt such an expansive statement of the law, reasoning that "a breach of a contractual duty is required for liability to attach under § 1132(a)(3)." Richards v. General Motors Corp., 991 F.2d 1227, 1231 (6th Cir.1993) (emphasis added). Thus, because Preston has failed to assert a breach of contract claim, he has also failed to assert a viable cause of action in Count II of his complaint. See Richards v. General Motors Corp., 850 F.Supp. 1325 (E.D.Mich.1994), on remand from 991 F.2d 1227 (6th Cir.1993) ("29 U.S.C. § 1132(a)(3) permits the recovery of compensatory damages to redress direct injury to a participant by a fiduciary that allegedly violated its 'contractual duty' under the terms of the retirement plan and under the provisions of ERISA.... [T]his interpretation of § 1132(a)(3) is very different from the one suggested by plaintiff (i.e. that a beneficiary may bring an individual action for breach of a 'fiduciary duty' under section 1132(a)(3)).").
 
 
 21
 The district court's dismissal of the complaint's third count is in accord with the abstention doctrine first articulated in Colorado River Conservation Dist. v. United States, 424 U.S. 800 (1976),[2] which permits a federal court to stay or dismiss an action when a parallel state court action is pending and extraordinary circumstances exist. Id. at 813.
 
 
 22
 In his appellate brief, Preston has conceded that his counterclaim in the state litigation, like Count III of his federal complaint, was a civil action to recover his benefits under the Plans pursuant to 29 U.S.C. § 1132(a)(1)(B). Nevertheless, Preston has petitioned this court to permit him to proceed on Count III because the state court's dismissal of his counterclaim allegedly left him without a forum in which to seek his benefits.
 
 
 23
 Although legal relief may have been unavailable in the state court at the time that Preston's appellate brief to this court was filed, relief is presently available in the state tribunal. See E.S. Preston Assoc., Inc. v. Preston, No. 95APE08-1027, 1996 WL 52889, at * 4 (Ohio App. 10 Dist. Feb. 6, 1996) (remanding the case because "[t]he trial court erred in dismissing the counterclaim for lack of subject matter jurisdiction"). Because de novo review of abstention decisions requires a court to "consider the progress that has been made in the state and federal actions" since the decision was made, Baskin v. Bath Township Bd. of Zoning Appeals, 15 F.3d 569, 571 (6th Cir.1994), and the relevant issue is " 'whether [the state court proceeding], as it currently exists, is a parallel, state-court proceeding,' " id. at 572 (quoting Crawley v. Hamilton County Commissioners, 744 F.2d 28, 31 (6th Cir.1984)) (alteration in original), abstention remains appropriate.[3]
 
 
 24
 The district court's dismissal of the instant case is AFFIRMED.
 
 
 
 [1]
 "Under the 'prudent investor' rule, a fiduciary has the duty 'from time to time to examine the state of the investments to see whether any of them have become such that it is no longer proper to retain them.' " Buccino v. Continental Assurance Co., 578 F.Supp. 1518, 1521 (S.D.N.Y.1983) (quoting III A. Scott, The Law of Trusts § 231 (1967))
 
 
 [2]
 Count III survived the motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) because it was neither time barred, see Ohio Rev.Code § 2305.06 (promulgating a fifteen year statute of limitations period for benefits), nor mistaken about the application of law
 
 
 [3]
 The district court explained that one extraordinary circumstance justifying the abstention in this case was Preston's obvious attempt to shop for a more receptive forum after eleven years of unsuccessful litigation in the state courts. Clearly "forum-shopping can in some cases justify Colorado River abstention." Fireman's Fund Ins. Co. v. Quackenbush, 87 F.3d 290, 297 (9th Cir.1996); cf. Baskin, 15 F.3d at 571 (noting that the extraordinary circumstances which trigger Colorado River abstention are not confined to the list of factors presented in Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 15-16 (1983))